FILED & JUDGMENT ENTERED
David E. Weich

Sep 11 2007

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: | )<br>) |
| **JOSE CABRERA, and**<br>**MARIBEL CABRERA,** | )  Case No. 03-30934<br>)  Chapter 13<br>) |
| Debtors. | )<br>) |
| _____ | )<br>)<br>) |
| **JOSE CABRERA, and**<br>**MARIBEL CABRERA,** | )  Adv. Proc. 04-3234<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| **HOME LOAN CORPORATION, d/b/a**<br>**EXPANDED MORTGAGE CREDIT;**<br>**SELECT PORTFOLIO SERVICES, INC.,**<br>**f/k/a FAIRBANKS CAPITAL**<br>**CORPORATION, BANK OF NEW YORK,**<br>**TRUST U/A dated 12/1/01; CAPITAL**<br>**CONVERSIONS CORPORATION;**<br>**FAMILY MORTGAGE GROUP, INC.;**<br>**ROBERT CONCHA; and EVERETTE DALE**<br>**FRAZIER,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| _____ | ) |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the bench trial of two remaining claims of the debtor/plaintiff's Complaint against mortgage broker Capital Conversions Corporation. After hearing all of the evidence, the court has concluded that the plaintiff has established her claim of a violation of N.C. Gen. Stat. § 75-1.1 by Capital Conversions, and is entitled to actual damages in the amount of $30,062. Pursuant to § 75-16, the court trebles the plaintiff's actual damages and finds Capital Conversions liable to her in the amount of $90,186. Finally, the court has concluded that plaintiff's claim for constructive fraud fails and must be dismissed.

## Statement of the Case

1.   This matter arises out of the purchase of a home and its financing by plaintiffs Jose and Maribel Cabrera in June 2000. In 2004 the Cabreras filed a Complaint against several mortgage providers and two mortgage brokers employed by the present defendant, Capital Conversions Corporation.

2.   The plaintiffs previously entered into a settlement with Home Loan Corporation d/b/a Expanded Mortgage Credit, Family Mortgage Group, Inc., and Everett Dale Frazier. Accordingly, those parties were dismissed from this action. The court granted summary judgment in favor of Select Portfolio Services, Inc. and Bank of New York and dismissed them from the Complaint. In addition, the plaintiffs obtained default

judgment against defendant Robert Concha. The remaining defendant is Capital Conversions Corporation ("Capital Conversions").

3. The Complaint stated five claims against Capital Conversions: (1) violation of N.C. Gen. Stat. § 75-1.1 (unfair and deceptive trade practices); (2) violation of § 75-1.1 (collection of unlawful loan discount fee); (3) breach of duty of loyalty; (4) treble damages pursuant to N.C. Gen. Stat. § 75-16 and reasonable attorneys' fees pursuant to N.C. Gen. Stat. 75-16.1; and (5) actual and constructive fraud.

4. Prior to trial the court entered summary judgment for Capital Conversions on the claims for breach of loyalty and actual fraud because they were time barred by N.C. Gen. Stat. § 1-52. The case proceeded to trial on the claims of constructive fraud and violation of N.C. Gen. Stat. § 75-1.1.

### Findings of Fact and Conclusions of Law

5. Plaintiffs Jose and Maribel Cabrera are debtors in a Chapter 13 bankruptcy case filed on March 13, 2003. They do not speak or read English. Jose Cabrera died during the pendency of this adversary proceeding.

6. Prior to June 2000, the Cabreras contacted Robert Concha, an employee of Capital Conversions, for assistance in purchasing a home. They contacted Concha in response to an advertisement placed in a local Spanish-language newspaper,

3

which identified Concha as an employee of Capital Conversions who spoke Spanish.

7. The Cabreras met with Concha and, as an employee of Capital Conversions, he undertook to find a home they could purchase and to arrange financing for the purchase.

8. Concha showed the Cabreras a home on Cosby Place, which was available for purchase from a mortgage company that owned the home after it had been abandonned. He encouraged the Cabreras to buy this home, and they agreed. The Cabreras issued a money order to Capital Conversions in the amount of $5,000.00 as a downpayment on their purchase of the home.

9. Without disclosure to the Cabreras, Concha undertook to purchase the Cosby Place home from the mortgage company owner and then to "flip" the property to the Cabreras. Concha was unsure of how to handle the "paperwork" for such a transaction and consulted about that with another Capital Conversions employee, Dale Frazier.

10. As part of the documentation process, Concha obtained an inflated appraisal of the Cosby Place property. While it is difficult to divine the value of property seven years after the appraisal was completed, this one has three clear earmarks of distortion: first, it was done by an appraiser who lived in another state; second, the appraisal ignored a number of contemporaneous comparable transactions in the Cosby Place

neighborhood and used instead a number of transactions from a more affluent neighborhood; and third, it ignored the fact that the property was contracted for sale to Concha for much less than the appraisal price.

11.  Concha arranged financing for the Cabreras, and they agreed to an adjustable rate mortgage.  Concha represented that he thought the mortgage could be refinanced and the payment reduced at a later date.

12.  The closing on the Cabreras' purchase of the Cosby Place home was an instantaneous triangular (or "flip") transaction.  The former mortgage company sold the property to Concha who immediately sold it to the Cabreras.  That transaction alone may be innocuous, but unknown to the Cabreras, the price of the property increased $28,000 during the instant that Concha owned it:  Concha bought the property for $79,000 and in the same transaction, an instant later sold it to the Cabreras for $107,000.  No value was added to the property during the instant Concha owned it.

13.  The terms of the mortgage agreed to by the Cabreras appeared to be reasonable and appropriate in all respects.

14.  In October 2000 the Cabreras refinanced their mortgage loan.  Concha and Frazier were no longer employed by Capital Conversions at that time.  So, Capital Conversions was not involved in that transaction.

5

15. N.C. Gen. Stat. § 75.1.1 provides that "unfair or deceptive acts or practices in or affecting commerce are declared unlawful." To establish a violation of § 75-1.1, a plaintiff must show that (1) the acts in question are "in or affecting commerce;" (2) the acts in question were unfair or had the tendency to deceive; and (3) the act in question proximately caused injury to the plaintiff. See, In re Summit Place, LLC, 298 B.R. 62, 74, (Bankr. W.D.N.C. 2002); In re Bozzano, 183 B.R. 735, 738 (Bankr. M.D.N.C. 1995); In re Kittrell, 115 B.R. 873, 877 (Bankr. M.D.N.C. 1990).

16. Concha's solicitation of the plaintiffs and subsequent execution of the "flip" transaction was unquestionably in or affecting commerce. His acts are deemed unfair under N.C. Gen. Stat. § 75-1.1 if they offend public policy or are considered "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumer." See Kittrell, 115 B.R. 873 at 877 (citations omitted). In addition, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." See id.

17. The "flip" transaction executed by Concha was intended to and did deceive the Cabreras to their financial detriment. They reasonably relied on Concha as their agent in connection with the purchase of the Cosby Place home, and he used his position to deceive them.

6

18. There is no evidence that senior management of Capital Conversions knew of the "flip" transaction executed by Concha. Further, it does not appear that Capital Conversions directly benefited financially from the "flip."

19. But, the court has concluded that Capital Conversions is responsible for the acts of its employees, Concha and Frazier. Capital Conversions put Concha in the position that enabled him to carry out his scheme. He was promoted as a Spanish-speaking representative of Capital Conversions. Capital Conversions gave him the authority to arrange and execute home purchase/finance transactions -- without supervision or timely review. In fact, Capital Conversions created the opportunity for Concha to do what he did, and it had no safeguards in place to prevent him from doing it. All of Concha's unlawful acts were executed in connection with the business of Capital Conversions. Consequently, Capital Conversions is legally responsible for Concha's unlawful acts.

20. The acts of Concha, attributed to Capital Conversions, constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. As a result, Mrs. Cabrera is entitled to recover her actual damages resulting from those acts. Since the mortgage loan itself was fair and reasonable, there are no damages flowing from that. Mrs. Cabrera's damages arise from the inflated price of the house paid at the closing. That

amount is $28,000. Because the broker should not benefit from his fraud, Mrs. Cabrera should also recover the fees paid to Capital Conversions at the closing: $1,712. Finally, the Cabreras were charged $350 for the inflated appraisal and should recover that amount. In sum, Mrs. Cabrera's actual damages total $30,062.

21. N.C. Gen. Stat. § 75-16 provides for trebling of actual damages in cases in which damages are assessed for violation of the provisions of Chapter 75 of the North Carolina General Statutes. Consequently, the court trebles Mrs. Cabrera's actual damages and finds Capital Conversions liable to her in the amount of $90,186.

22. N.C. Gen. Stat. § 75-16.1 provides for assessment of reasonable attorneys' fees to a prevailing plaintiff on a § 75-1.1 claim within the presiding judge's discretion and upon a finding that the "party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." See N.C. Gen. Stat. § 75-16.1. Capital Conversions' liability is vicarious only. Consequently, the court does not find Capital Conversions' conduct to be "willful." Moreover, the plaintiff did not present evidence of an unwarranted refusal by Capital Converstions to resolve this matter. Accordingly the

8

court declines to assess attorneys' fees in favor of the plaintiff.

23. The evidence demonstrates a case of actual fraud, which claim the court previously ruled is time barred by N.C. Gen. Stat. § 1-52. Consequently, plaintiff's claim for constructive fraud must fail.

24. That plaintiffs has recovered the sum of $5,000 from defendant Dale Frazier. Any recovery from Capital Conversions should be reduced by that amount.

25. The Cabreras' payment of a purchase price that was inflated by upwards of $28,000 caused them to pay monthly mortgage payments that were likewise inflated. To compensate Mrs. Cabrera for those inflated payments, she should recover pre-judgment interest at the same rate she was charged on her mortgage, as adjusted periodically.

It is therefore **ORDERED** that:

1. The plaintiff, Maribel Cabrera, shall have and recover from Capital Conversions Corporation on her claim of unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 the sum of $30,062.

2. Pursuant to N.C. Gen. Stat. § 75-16, the court trebles Mrs. Cabrera's actual damages and finds Capital Conversions liable to her in the amount of $90,186.

3. Plaintiff's recovery pursuant to paragraph 2 above, shall bear interest at the rate periodically charged on her mortgage from June 2, 2000, through the date of this Order, and at the rate provided by 28 U.S.C. § 1980 thereafter.

4. Defendant Capital Conversions is entitled to a credit of $5,000 (plus appropriate interest adjustment) on amounts paid pursuant to paragraph 2 above.

5. The court shall conduct a hearing on September 26, 2007, at 9:30 a.m. in Courtroom 126 at the Charles R. Jonas Federal Courthouse, 401 W. Trade Street, Charlotte, North Carolina, for the purpose of finalizing the exact amount of recovery specified herein. The court will enter a final judgment after that hearing.

**This Order has been signed electronically.    United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of the Order.**